# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**RICHARD M. FISCHER,**

                    **Petitioner,**

  **v.**          **Case No. 10-C-553**

**OZAUKEE COUNTY CIRCUIT COURT,**

                    **Respondent.**

---

## DECISION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS

---

### I. PROCEDURAL HISTORY

On July 6, 2010, Richard M. Fischer ("Fischer"), proceeding with the assistance of counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 1), as well as a brief in support of his petition, (Docket No. 2). On July 22, 2010, the Honorable Rudolph T. Randa screened Fischer's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 5.) The respondent answered the petition on August 31, 2010, (Docket Nos. 10, 11), and the petitioner has replied, (Docket No. 12). This matter was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. (Docket Nos. 4, 7, 8.) The pleadings on Fischer's petition are closed and the matter is ready for resolution.

On March 21, 2007, Fischer was convicted in Ozaukee County Circuit Court following a jury trial of second offense operating a vehicle under the influence and operating a vehicle with a prohibited blood alcohol concentration. (Docket No. 1 at 2.) He was sentenced to serve 5 days in jail and pay a $350.00 fine, and his driver's license was suspended for one year. (Docket No. 1 at

2.) Execution of this sentence was stayed pending appeal. (Docket No. 1 at 1.) This stay remains in effect and according to the judgment of conviction, Fischer remains subject to the conditions of bail while this stay is in effect. (Ans. Ex. A.) Thus, Fischer is "in custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254(a). Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist., 411 U.S. 345, 346 (1973).

Fischer appealed and on September 10, 2008, the court of appeals affirmed. (Docket No. 1 at 3; Docket No. 1 at 13-19.) Fischer petitioned the Wisconsin Supreme Court for review, which was granted, and on February 2, 2010, the Wisconsin Supreme Court affirmed Fischer's conviction. (Docket No. 1 at 3; Docket No. 1 at 20-35.) Fischer filed a petition for certiorari with the United States Supreme Court, which was denied on June 21, 2010. (Docket No. 1 at 4; Docket No. 1 at 36.)

In his present petition, Fischer presents one claim for relief. He contends that the trial court's exclusion of the defendant's expert, who would have testified that the defendant's blood alcohol concentration ("BAC") at the time he was driving was lower than that required for conviction, violated Fischer's right to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Docket No. 1 at 6-7.)

Fischer sought to introduce the testimony of an expert who utilized the results of the preliminary breath test ("PBT") conducted on Fischer by a police officer at the roadside "as one of the mathematical constraints or bases of his opinion" that Fischer's BAC at the time he was driving was below the legal threshold of 0.08%. (Docket No. 2 at 2.) The trial court barred this testimony because Wis. Stat. § 343.303 precludes PBT results from being admitted in any action or proceeding except to show probable cause for an arrest. The matter proceeded to trial and the state called an expert who opined that Fischer's BAC at the time he was driving was in excess of 0.08%. (Docket No. 2 at 3.) Fischer did not call an expert to rebut this opinion.

Fischer contends that invoking Wis. Stat. § 343.303 to prevent him from presenting an expert witness to rebut the prosecution's expert offends his constitutional right to present a defense. The Wisconsin Supreme Court disagreed with Fischer's position, relying in part upon <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998), wherein the Court "held that state rules that result in exclusion of defense evidence are constitutionally valid 'so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.'" <u>State v. Fischer</u>, 2010 WI 6, ¶5, 322 Wis. 2d 265, 778 N.W.2d 629 (quoting <u>Scheffer</u>, 523 U.S. at 308) (internal quotation marks omitted). The Wisconsin Supreme Court held that

> in an OWI prosecution, even if a defendant establishes a constitutional right to present an expert opinion that is based in part on PBT results, the right to do so is outweighed by the State's compelling interest to exclude that evidence. Permitting the use of that evidence as the basis for an expert opinion would render meaningless the legislature's act forbidding such evidence in OWI prosecutions, an act that promotes efficient investigations of suspected drunk driving incidents and furthers the State's compelling interest in public safety on its roads. The legislature's decision limiting the admissibility of PBT results helps law enforcement officers do their jobs with more cooperation from drivers than they would otherwise be likely to get— cooperation that is especially critical given that a PBT may be requested when an officer has a basis to justify an investigative stop but has not established probable cause to justify an arrest.

<u>Id.</u>

The respondent admits that Fischer's petition is timely, that he has exhausted his state court remedies with respect to the ground for relief raised in the petition, and that the petition is not a second or successive petition. (Docket No. 10 at ¶¶3, 6.)

## II. FACTS

The following relevant facts are contained in the Wisconsin Supreme Court's decision:

The following facts are undisputed: In January 2005, Fischer was pulled over when an officer observed lane deviation and suspected drunk driving. The stop occurred at approximately 1:40 a.m. Fischer performed poorly on field sobriety tests. After those tests, at a time unspecified in the police report, a PBT was administered, and it measured a breath alcohol content of .11 percent. Fischer was arrested; a chemical blood test taken at 2:48 a.m. showed a BAC of .147 percent. He was charged with operating while intoxicated, second offense, and operating with a BAC of .08 or

more, second offense, contrary to Wis. Stat. § 346.63(1)(a) and (b). Fischer pled not guilty, and the case was set for trial.

He retained an expert who prepared a report using the data from the two tests, estimates as to the precise timing of the breath test after the stop, and absorption rate formulas to generate absorption curves, with the purpose of estimating the BAC prior to the time the PBT was taken, at the moment Fischer was stopped. In his report, the expert said his calculations were based on a method similar to the one known as speculative retrograde extrapolation, which uses known data to estimate a person's BAC at an earlier point in time. In the first report, dated February 13, 2006, the expert included the results of both tests and reached the following conclusion:

> I conclude that Mr. Fischer was in the absorptive phase when he was stopped and that his BAC was increasing with a high degree of scientific certainty. In addition my analyses, based on the chosen assumptions, indicate that the data are most consistent with, but do not establish, the hypothesis that Fischer was below the 0.08% threshold when stopped.

In June 2006, the State filed a motion in limine to exclude the expert's report and testimony "to the extent the report and testimony rely on the PBT result," on the grounds that "(1) the PBT result is inadmissible at trial pursuant to statute and (2) there is no showing that the PBT result is reliable for any purpose other than probable cause." After the State filed its motion in limine, Fischer submitted a second report, dated July 7, 2006, which his expert prepared on the basis that the PBT result could not be included in the data used for the analysis. The expert concluded, "[T]he single determination of blood alcohol made at 2:48 [a.m.] over an hour after [Fischer's] arrest is insufficient to establish that his blood alcohol content was above the 0.08% threshold when he was stopped at 1:40 [a.m.]."

In a third submission by the expert, which was attached to Fischer's response to the State's motion in limine and submitted as Fischer's offer of proof after the court granted the motion, the expert, Dr. John Steele, contrasted the analysis possible using both the PBT and blood test results with the analysis possible without the use of the PBT result, and concluded:

> If one rejects the breath test data and relies only on the blood test, then the plausible range of BAC when Mr. Fischer was stopped ranges from near 0.0% to 0.164%[,] a range which is both higher and lower than the critical 0.080% legal threshold. . . .

> If one includes the breath test result, . . . then at the time he was stopped Mr. Fischer most likely had a BAC of approximately 0.040% to 0.067%.

The report that was the subject of the motion in limine included Fischer's PBT result in the text of the report. Though the report attached to Fischer's offer of proof stated that the PBT result "played <u>no</u> role in computing the curves," the report acknowledged that the PBT result played a significant role in the overall analysis by "allow[ing] the range of BAC [at the time of the stop] to be narrowed down."

Following a motion hearing on the matter, the circuit court granted the State's motion in limine. In so doing, the court observed that it was not aware of the legislative history of § 343.303, but that the legislature's intention was clear that "it was never contemplated that [a PBT] would be an evidentiary test." The circuit court said its ruling was made "in light of the legislature's clear pronouncement about the admissibility here." We note that had Fischer disclosed to Dr. Steele when and what alcoholic beverages he had been drinking, absorption curve opinion evidence from the expert based on that evidence would have been admissible.

The matter was tried to a jury. The defense theory, as summarized in counsel's closing argument, was that the arresting officer was overeager to make an arrest and was therefore "not fair," and that Fischer was "going up on the absorption curve" when he was stopped and his BAC had not reached the .08 percent threshold. The jury convicted Fischer on both charges.

Id. at ¶¶8-14 (footnotes omitted).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

Thus, with the passage of the AEDPA, no longer does a federal court reviewing a state inmate's petition for writ of habeas corpus conduct a de novo review of a state court's decision. Williams v. Taylor, 529 U.S. 362, 384 (2000). Although § 2254(d)(1) does not require a federal court to defer to a state court's interpretation of federal law, it does require a federal court to carefully weigh all the reasons for accepting a state court's judgment and upset the state court's determination only if the federal court is convinced that the petitioner's custody violates the Constitution. Williams, 529 U.S. at 389.

The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. Id. (citing

§ 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." <u>Smith</u>, 565 F.3d at 1043 (citing <u>Waddington v. Sarausad</u>, 129 S. Ct. 823, 831 (2009); <u>Sturgeon v. Chandler</u>, 552 F.3d 604, 609 (7th Cir. 2009)).

A state court decision is "contrary to" a decision of the United States Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." <u>Williams</u>, 529 U.S. at 406. A state court decision is not "contrary to" a decision of the United States Supreme Court merely because a federal court, if asked to review the matter anew, would reach a different conclusion than that of the state court. <u>Id.</u>

The "unreasonable application" prong applies when, for example, the "state-court decision . . . correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> at 407-08. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409; <u>see also</u> <u>Waddington</u>, 129 S. Ct. at 830 ("Where, as here, it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" (quoting <u>Middleton v. McNeil</u>, 541 U.S. 433, 436 (2004) (per curiam) (in turn quoting <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam))); citing <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold")). A petitioner is not required to show that no reasonable jurist would agree with the state court's decision, but on the flip-side, "a federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Williams</u>, 529 U.S. at 409-11.

## IV. ANALYSIS

> State and federal rulemakers have broad latitude under the U.S. Constitution to establish rules excluding evidence from criminal trials. This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the U.S. Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.

<u>Holmes v. South Carolina</u>, 547 U.S. 319, 324-25 (2006) (internal citations and quotation marks omitted). When an evidentiary or procedural rule results in an outright denial or significant diminution of the right to present a defense, this calls into question the integrity of the fact finding process and requires close examination. <u>Chambers v. Miss.</u>, 410 U.S. 284, 295 (1973). In the present case, the application of Wisconsin's ban on the admission of PBT evidence resulted in the complete denial of a defense that, if believed, would have resulted in Fischer's acquittal and thus must be closely examined.

In <u>Holmes</u>, the Court summarized four cases in which it held that state evidentiary rules unconstitutionally denied a defendant the right to present a defense. In <u>Washington v. Texas</u>, 388 U.S. 14 (1967), the Court found that a state statute that prohibited a co-defendant from testifying on behalf of a defendant unless the co-defendant had been acquitted was arbitrary because, in part, there was no prohibition upon the state calling a co-defendant as a witness. <u>Holmes</u>, 547 U.S. at 325. The Court found a similar constitutional violation when it held that Mississippi's "voucher rule," which prohibited a party from impeaching its own witness, violated a defendant's right to present a defense when it was applied to prevent a defendant from impeaching a witness who denied committing the murder the defendant with which the defendant was charged with the fact that the witness had previously confessed the murder. <u>Id.</u> (citing <u>Chambers</u>, 410 U.S. 284).

When a Kentucky court refused to allow a murder defendant to present evidence about the circumstances under which his confession was elicited in an effort to show that the confession, although determined admissible by the court following a pre-trial motion to suppress, was nonetheless not believable, the Court held that this denied the defendant his right to present a defense. Id. at 326 (citing Crane v. Ky., 476 U.S. 683 (1986)). In Crane, the Court determined that neither party "advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." Id. at (quoting Crane, 476 U.S. at 691).

The Court found that Arkansas' wholesale exclusion of hypnotically refreshed testimony denied a defendant the ability to present a defense when it was applied to prevent a defendant testifying as to her recollection of the facts surrounding the murder she was charged with committing. Rock v. Arkansas, 483 U.S. 44, 56 (1987). The Court held that because Arkansas' rule precluded any use of hypnotically refreshed testimony, irrespective of the demonstrated reliability of the recalled information, the rule was irrational. Id. at 61-62.

In Holmes, the defendant had sought to introduce evidence that another man committed the crime with which the defendant was charged. The Court reversed the defendant's conviction finding that the state court's prohibition upon a defendant presenting evidence of the guilt of a third party when the prosecution's case is strong served no rational purpose. Holmes, 547 U.S. at 328-31.

However, on the opposite side, the Court held in United States v. Scheffer, 523 U.S. 303 (1998), that a bar on the admission of polygraph evidence was a rational restriction that did not interfere with a defendant's right to present a defense. Id. at 316-17.

In the present case, the Wisconsin Supreme Court held that Wisconsin's prohibition upon the utilization of PBT results for any purpose, including when used only as one element of an expert's conclusion, was a rational restriction that benefited and limited prosecutors and defendants equally. Fischer, 2010 WI 6, ¶26. Allowing an expert report as a backdoor to admit PBT test results

before the trier of fact would nullify Wis. Stat. § 343.303. Id. at ¶25. The court also stated that the prohibition against using PBTs in court served the important state interest of getting drunk drivers off the road; the court opined that if PBTs were admissible in court, a driver stopped based upon reasonable suspicion that he was driving while intoxicated would be disinclined to submit to a PBT because of a fear that the PBT results would be used against him in court. Id. at ¶¶30-32. Thus, absent the total prohibition of PBTs being used for any purpose, more situations may arise where a police officer is forced to let an impaired driver drive away because, although the officer has reasonable suspicion that the driver is intoxicated, he nonetheless lacks the probable cause to arrest that might be provided by a PBT. Id. at ¶32.

As discussed above, an individual challenging a state evidentiary rule as an infringement upon his right to present a defense must demonstrate that the rule is arbitrary or disproportionate to the purposes it is designed to serve. This standard, by itself, is a high hurdle for a defendant to overcome. But when an individual is challenging a state evidentiary rule in a § 2254 petition for a writ of habeas corpus, the hurdle is even higher. Not only must the petitioner demonstrate that the rule is arbitrary or disproportionate to the purposes it is designed to serve, but also that the state court's resolution of that matter was plainly contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Although the hurdle is high, for the reasons set forth below, it is a hurdle that the court concludes Fischer has cleared.

The unreliability of a PBT was, in the view of the trial court, the court of appeals, and the state, the reason why the legislature barred the use of PBT results at trial for any purpose. See (Ans. Ex. M at 15-16); State v. Fischer, 2008 WI App 152, ¶13, 314 Wis. 2d 324, 761 N.W.2d 7; (Ans. Ex. I at 5-14). The court of appeals discussed at length how PBTs are quite different from an Inoximeter, which, like a PBT calculates a BAC from a sample of breath, but unlike a PBT is subject to strict protocols regarding reliability and is admissible in court. Fischer, 2008 WI App

9

152, ¶¶4-6. Similarly, in a concurrence joined by Justices Patience Drake Roggensack and Michael J. Gabelman, Justice Annette Kingsland Ziegler followed the reliability route that the trial court and court of appeals utilized to reach the conclusion that exclusion of PBT results for any purpose was a reasonable legislative decision that did not deny Fischer the right to present a defense. Justice Ziegler noted that, although PBT results might be admissible in other contexts, courts have not recognized their admissibility to prove that an individual has a specific BAC, which in the context of a drunk driving case is an element of the offense that is often hotly contested. Id. at ¶38. Allowing PBT results to be admitted for any purpose would almost surely lead to a dispute over the accuracy of this method and thus would run the risk of confusing a jury and undermine the presumption of accuracy afforded to other chemical tests such as the Intoxilyzer, which like a PBT, relies upon a breath sample to determine an individual's BAC. Id. at ¶¶40-41.

The United States Supreme Court recognized: "State and federal governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." Scheffer, 523 U.S. at 309. In the context of polygraph examinations, the Court held that because there was no consensus that polygraph evidence is reliable, the wholesale exclusion of such evidence was a reasonable restriction that did not offend a defendant's right to present a defense. Id. at 310-12. The exclusion of evidence determined to be unreliable also served other important interests such as ensuring that the trial does not devolve into a trial over the reliability of the evidence and thus detract and distract from the central question of the defendant's guilt or innocence. Id. at 315.

All the same could be said regarding PBTs and, in fact, was said by the lower courts that heard this matter and by three Justices concurring in Fischer. However, this court is unable to rely upon the rationale stated by the trial court, the court of appeals, or a minority of the Wisconsin

Supreme Court in order to resolve Fischer's petition. Rather, this court must constrain its review to the majority decision of the Wisconsin Supreme Court, and the majority expressly rejected the state's argument that concerns about reliability warranted the wholesale exclusion of PBT results for any purpose in a drunk driving case. The court stated:

> There is no basis for speculating that the reason the legislature prohibited the evidentiary use of a test that is used hundreds of times every day in Wisconsin is that it is "of dubious reliability even under the best testing conditions," as the State argued in its brief. In fact, a review of the legislative history of Wis. Stat. § 343.303 gives no indication whatsoever that the prohibition on the use of PBT results is rooted in concerns about reliability of the test. If the PBT's reliability were of such concern, it would be a small thing for any competent defense attorney to attack the reliability of PBT results and thereby limit the value to the prosecution of such evidence. Saying that PBT results are not admissible is not the same thing as saying they are not reliable. Wisconsin's tradition of leaving the weight and credibility of the evidence to the trier of fact, which continues to be the law, cannot be squared with an analysis that excludes evidence on the basis of its lack of reliability.

Id. at ¶34 (footnote omitted). This is a conclusion that this court is bound to respect, and thus it would be inappropriate for this court to consider whether the alternative position taken by the lower state courts and the minority of the Wisconsin Supreme Court is sufficient to sustain the result in this case.

The majority instead relied upon the state's compelling interest in arresting and convicting drunk drivers to conclude that the exclusion of PBT evidence did not violate Fischer's right to present a defense. The court stated: "The State argues that promoting the gathering of evidence necessary to arrest those who are actually intoxicated obviously furthers the State's compelling interest in arresting and prosecuting drunk drivers, and we agree." 2010 WI 6, ¶32. The state's argument, which the Wisconsin Supreme Court adopted, focused upon drivers who were stopped as a result of a police officer's reasonable suspicion that they were intoxicated but for whom the police lacked probable cause to arrest for drunk driving. (Ans. Ex. I at 15-17.)

For suspected drunk drivers who fall into this narrow gap between reasonable suspicion and probable cause to arrest, the state argued that Wisconsin's PBT statute serves a valuable purpose.

Unless there is probable cause to arrest an intoxicated driver, Wisconsin's implied consent law (Wis. Stat. § 343.305) requiring the driver to provide a blood, breath, or urine sample for chemical analysis cannot be invoked. Thus, the state posits that by assuring a suspected drunk driver that his PBT results will be used only for determining whether he will be allowed to go on his way or arrested and subject to further testing, but will not be used to determine his guilt or innocence at trial, removes a disincentive for drivers to agree to a PBT. (Ans. Ex. I at 16.)

> The [United States Supreme] Court has stressed that "no one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it," Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 451 (1990), but at the same time has recognized that the severity of the problem "cannot excuse the need for scrupulous adherence to our constitutional principles," Grady v. Corbin, 495 U.S. 508, 524 (1990).

Harmelin v. Michigan, 501 U.S. 957, 1023 (1991).

Although arresting and convicting suspected drunk drivers is undisputedly a compelling state interest, in the opinion of this court, the Wisconsin Supreme Court's stated rationale that this interest bars the admission of PBT evidence for the purpose of presenting it at trial is wholly speculative and arbitrary. Neither the state nor the Wisconsin Supreme Court has supported this conclusion through any legislative history or any other factual support. Although the Wisconsin Supreme Court refers to its prior decision in County of Jefferson v. Renz, 231 Wis. 2d 293, 603 N.W.2d 541 (1999), wherein the court discussed the legislative history of § 343.403, Renz does not offer any meaningful insight into why the legislature concluded that PBTs were inadmissible for any purpose. Rather, the issue in Renz was what was meant by the phrase "probable cause to believe" a driver is intoxicated, which is the quantum of evidence necessary before a police officer may ask a motorist to undertake a PBT. Relying in part upon legislative history, the court concluded that the legislature sought to empower law enforcement officers to use PBTs as a preliminary screening tool for instances where the police officer did not yet have the probable cause necessary

to make an arrest. <u>Renz</u>, 231 Wis. 2d 293, ¶47, 603 N.W.2d 541. This is clearly a question wholly distinct from that which was before the court in <u>Fischer</u>.

The only portion of <u>Renz</u> that might arguably support the conclusion that the legislature banned any use of PBTs in order to further a goal of ensuring the safety of its roads is paragraph 46 wherein the court quotes a portion of the Act that created Wis. Stat. § 343.303 which states:

(13) OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANT OR CONTROLLED SUBSTANCE . (a) The legislature finds that:

1. Operation of motor vehicles by persons who are under the influence of an intoxicant seriously threatens the public safety and welfare.

2. Persons who operate motor vehicles while under the influence of an intoxicant do so in disregard of the safety and welfare of both themselves and other members of the driving public and of the laws of this state.

3. Penalties are an important and necessary element in deterring the operation of motor vehicles by persons who are intoxicated.

4. A substantial number of persons who operate motor vehicles while intoxicated are in need of treatment or education or both to prevent further offenses related to the use of intoxicants.

(b) The legislature intends by passage of this act:

1 . To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated.

5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated.

§ 2051(13)(b), ch. 20, Laws of 1981.

Upon reviewing the totality of this Act, it becomes clear how futile it is to ascertain any legislative intent for the exclusion of PBT evidence from this isolated passage. Section 343.303 was

created as part of a nearly 500 page budget bill that included a broad revision of the state's laws related to drunk driving and many other subjects. The provision quoted above appears over 50 pages later and is separated by various provisions on such wholly unrelated matters as who may issue marriage licenses and appropriations for energy programs. To conclude that this stated rationale motivated the legislature when it passed a narrow sub-provision in § 343.303 regarding the use of PBT results is only slightly more persuasive than concluding that the legislature limited the persons who may issue marriage licenses in an effort to keep drunk drivers off the road.

The Wisconsin Supreme Court's conclusion that the purpose of banning PBTs at trial is to keep the roads safe appears to have been made from whole cloth. This is not to say that a statute is arbitrary if a rationale for upholding the law is not found within the legislative history, or that a court tasked with determining whether a law's application is arbitrary is limited to what is contained in the legislative history. This court merely highlights the lack of support in the legislative history to demonstrate how the conclusion of the Wisconsin Supreme Court appears to have been a product of pure speculation. A contrary, and perhaps stronger, but similarly speculative and arbitrary argument could be made that permitting defendants to utilize PBT results as Fischer seeks to do would also encourage a driver to take a PBT, thus serving the state's interest.

The Wisconsin Supreme Court concluded that barring the admission of PBT results removes a disincentive for a driver to agree to a PBT, i.e. the fear that it will be used against him in court. The court reasoned that a driver might not want to take a roadside PBT for a variety of reasons but if a police officer can say, "Don't worry. This test cannot be used against you at trial," this removes a very subtle disincentive for an otherwise reluctant suspected drunk driver to agree to the test. It should be noted the officer's statement is not wholly accurate. Although it is correct that the PBT results cannot be used *against* a suspected drunk driver, it is also true that the test also cannot be used *in favor* of defendant at trial. Thus, much of the arguable disincentive fostered by the

representation that the PBT results will not be used against a defendant at trial is vitiated by the flip side that a defendant, likewise, could not use the results if they were beneficial to him. If the rationale behind Wis. Stat. § 343.303 is to encourage suspected drunk drivers to agree to a PBT by removing the fear of its use, it is a rationale based on a half truth.

Moreover, the removal of the disincentive that the PBT results would be used against a driver in court certainly does not provide such person any incentive to take a PBT. The Wisconsin Supreme Court in Fischer discussed individuals falling within a gap between reasonable suspicion to justify an investigative stop and probable cause to justify an arrest. Fischer, 2010 WI 6, ¶26. However, as Renz makes clear, the relevant gap is even smaller. A police officer may request a driver to undergo a PBT if the police officer has "probable cause to believe" that the individual is intoxicated, Wis. Stat. § 343.303, which is a quantum of proof the Wisconsin Supreme Court determined was greater than the reasonable suspicion required to make a traffic stop, but less than the probable cause to arrest. Renz, 231 Wis. 2d 293, ¶47, 603 N.W.2d 541. Thus, a police officer is without recourse should the driver refuse a PBT only if the officer lacks probable cause to arrest.

A driver who falls into this narrow gap, regardless of whether the results would be used against him in court, will almost always be well-advised to literally keep his mouth shut and his breath out of a PBT. If law enforcement lacks probable cause to arrest, agreeing to a PBT is merely giving law enforcement an additional opportunity to establish probable cause to arrest. If the PBT shows the driver has a prohibited BAC, he will likely be arrested and subjected to additional testing. If the PBT suggests that the driver's BAC is not over the legal limit, he will either be asked to submit to additional testing based on other observations of his conduct, or allowed to go on his way. Either of these latter scenarios would have occurred if the driver had not agreed to the PBT.

A suspected drunk driver has an incentive to agree to a PBT only if he believes he is going to be arrested anyway, and thus is outside the narrow gap addressed by the Wisconsin Supreme

Court. For example, a PBT might vitiate a police officer's probable cause that a person is intoxicated and reveal that the evidence of impairment was not the product of alcohol intoxication but instead a result of fatigue or a medical problem and thereby save a non-intoxicated driver from arrest. Additionally, a suspected drunk driver might agree to take a PBT if he believed he was going to be arrested anyway and the PBT results could later be utilized as part of some sort of defense, which is, ironically, precisely what the Wisconsin Supreme Court has barred. Thus in precluding the use of PBT results for any purpose, the Wisconsin Supreme Court's interpretation of § 343.303 eliminates one of the very few incentives for a suspected drunk driver to gamble and agree to such a test.

Moreover, like the rule barring hypnotically refreshed testimony struck down by the Court in Rock, the present statute deprives a trial court from exercising any discretion. Arkansas barred hypnotically refreshed testimony out of concerns that such testimony was inherently unreliable. Rock, 483 U.S. at 56. The Court rejected this argument and held that a per se rule barring admission irrespective of other indicia of reliability, for example, corroboration through physical evidence or independent witness testimony, violated a defendant's right to present a defense. Id. But in the present case, Wisconsin's similarly strict per se prohibition that deprives a trial judge of any discretion to ever allow PBT evidence is on even weaker footing in that the Wisconsin Supreme Court has expressly rejected the suggestion that PBT results are inherently unreliable.

It is important to note, however, that it is not sufficient that Wisconsin's total prohibition upon the use of PBT evidence at trial have a rationale basis. Because the law infringes upon a weighty right of the accused, the analysis is more searching than the due process analysis that applies to an ordinary law. Rather, it must yield not only if its application in the present situation is arbitrary but also if it is disproportionate to the purpose it is designed to serve. It is on this second

element that this court concludes that the conclusion of the Wisconsin Supreme Court was most obviously an unreasonable application of federal law as determined by the Supreme Court.

On one side of the balance is the defendant's interest, which is undisputedly strong. The defendant sought to utilize the PBT results as one aspect of an expert's conclusion, which, if believed, would mean that the defendant was not guilty of the crime charged. This was not evidence that would simply raise questions regarding the prosecution's case but rather, if accepted by the jury, would mean that Fischer was not operating with a prohibited BAC. There is no more important interest of a defendant than the opportunity to exonerate himself.

Located on the other side of the balance is the state's interest in removing a disincentive for a driver to agree to a PBT. As this court previously observed, any value of removing the disincentive that may result if the PBT could be used against a driver in court is reduced, if not negated, by the fact that the driver is likewise barred from using any beneficial results of the test. Further, notwithstanding the promise not to use the results in court, a driver for whom the police lacked probable cause to arrest would still be disinclined to agree to a PBT which would provide the police with an additional opportunity to gather probable cause evidence to arrest. The state's interest, as articulated by the Wisconsin Supreme Court, is better served by a narrower law. Permitting Fischer to utilize a PBT result in the narrow circumstances he presents does not, in any way, eliminate the ability of the legislature to empower the police to encourage a reluctant driver to agree to a PBT with the promise that it will not be used against him in court. In other words, the legislature could promulgate a law that prohibits the use of PBT results by the state against a defendant. If the expressed rationale is valid, such a law would remove a disincentive for drivers to agree to take a PBT.

Also in the balance is the fact that the Wisconsin Supreme Court has expressly rejected the argument that PBT evidence is inherently unreliable. Thus, this negates what other courts have

recognized is a strong government interest in keeping unreliable information from the jury. See Scheffer, 523 U.S. at 309.

The final factor in the balance is that the class of drivers that the police would be unable to arrest, absent driver consent to a PBT, is limited to those for whom the police only have "probable cause to believe" are intoxicated, but lack "probable cause to arrest." As Chief Justice Abrahamson noted in a concurring opinion in Renz, that was joined by Justice Ann Walsh Bradley, these articulations of probable cause "may, in real life, be indistinguishable." 231 Wis. 2d 293, ¶55, 603 N.W.2d 541. If they exist at all, they are "crammed on a narrow spectrum." Id. This court shares the view of Chief Justice Abrahamson that, in reality, this distinction between "probable cause to believe" and "probable cause to arrest," if it exists at all, is extremely narrow and thus infrequently relevant.

A succinct summary of this court's balancing analysis is that the Wisconsin Supreme Court in Fischer determined that the state's interest in removing a questionable disincentive for a narrow class of drivers that may be non-existent due to the almost indistinguishable probable cause definitions, outweighs the need of a criminal defendant to present reliable evidence that may provide a defense to the charged crime. The court must reject that balancing act. Accordingly, this court concludes that this situation clearly calls for an application of the United States Supreme Court's holding that a state evidentiary rule must yield if its infringement upon a weighty right of the accused is disproportionate to the interest it was designed to serve. Thus, the court concludes that the Wisconsin Supreme Court's decision affirming the exclusion of Fischer's expert's testimony involved an unreasonable application of federal law as determined by the United States Supreme Court and therefore, a conditional writ shall be granted.

In this regard, the court notes that Fischer's petition deals with a very narrow issue. He seeks to use the PBT, not as a single piece of evidence to show he was not intoxicated, but rather as one

element of an expert's testimony. Thus, the court's conclusion relates only to Fischer's ability to utilize PBT results as one aspect of an expert's report; this court is not making any determination as whether § 343.303 unconstitutionally bars a defendant from directly admitting PBT results into evidence. Further, this court is not considering whether the state, either as part of its case in chief or in rebuttal of a similar expert report proffered by the defendant, is likewise able to present PBT evidence when used as just one part of an expert report. Finally, the court is not considering whether the expert's opinion is admissible under Wis. Stat. §§ 907.02 and 907.03. These, and perhaps many other related questions, are questions for the state courts and the legislature.

## V. CONCLUSION

For the reasons set forth above, the court shall grant Fischer a writ of habeas corpus. There remains the question of the precise nature of the writ. Fischer is unlike the ordinary § 2254 petitioner because rather than seeking release from current incarceration, Fischer seeks to prevent the state from enforcing the custodial sentence of five days in jail that has been stayed pending appeal. Further, the judgment against Fischer contains both custodial (five days in jail) and non-custodial (fine and suspension of driver's license) elements.

If Fischer had been sentenced to merely a fine and a suspension of his driver's license, this court would be unable to grant Fischer any relief because these punishments do not constitute "custody" under § 2254(a). See, e.g., United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990) (citing Lillios v. State of New Hampshire, 788 F.2d 60, 61 (1st Cir. 1986); Lefkowitz v. Fair, 816 F.2d 17, 20 (1st Cir. 1987)) (cited in Virsnieks v. Smith, 521 F.3d 707, 717 (7th Cir. 2008)); Tinder v. Paula, 725 F.2d 801, 804 (1st Cir. 1984) ("[H]abeas is not available as a remedy for fine-only convictions although the defendant remains subject to the supervision of the court and failure to pay the fine could result in incarceration.") (citing cases); Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) ("[A] fine-only conviction is not enough of a restraint on liberty to constitute 'custody' within

the meaning of the habeas corpus statutes."); Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003); Harts v. Indiana, 732 F.2d 95, 96 (7th Cir. 1984) (citing Westberry v. Keith, 434 F.2d 623, 624-25 (5th Cir. 1970) ($250 fine and one year driver's license revocation not custody within 28 U.S.C. § 2254); Whorley v. Brilhart, 359 F. Supp. 539, 541-42 (E.D. Va. 1973) (ten year license revocation not custody)).

Even though the judgment of conviction indicates that Fischer's failure to pay the fine will result in 10 days in jail, absent evidence that Fischer lacks the financial resources to pay the fine, the court would be unable to grant Fischer relief from this threat of future custody if this had been the extent of his sentence. See Michaud, 901 F.2d at 7 (citing Dremann v. Francis, 828 F.2d 6, 7 (9th Cir. 1987); Spring v. Caldwell, 692 F.2d 994, 999 (5th Cir. 1982) (outstanding arrest warrant for failure to pay fine not a restraint on liberty)).

Having concluded that Fischer is "in custody in violation of the Constitution," 28 U.S.C. § 2254(a), this court is required to dispose of petition "as law and justice require." 28 U.S.C. § 2243. The court is mindful that the Seventh Circuit has held "the language of the statute prevents consideration of pendent challenges" merely because the petitioner is "in custody." Virsnieks, 521 at 721. However, leaving in place a judgment that imposes additional punishment for a conviction that this court has determined was obtained in violation of the defendant's constitutional rights is an action that appears entirely inconsistent with the command to dispose of the petition as law and justice requires.

"Conceptually, any habeas remedy 'should put the defendant back in the position he would have been in if the [constitutional] violation never occurred.'" Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003) (quoting United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994)). Absent relief from all consequences of his conviction, Fischer will not be placed back in the position he would have been had the violation never occurred. Thus, it is the conclusion of this court that law

and justice require that Fischer's judgment of conviction be vacated, expunged, or otherwise set aside unless the state initiates proceedings to retry and commences the retrial of Fischer in accordance with the provisions of this order within 60 days of the date of this order. See A.M. v. Butler, 360 F.3d 787, 802 (7th Cir. 2004) (ordering juvenile's adjudication of delinquency be expunged unless granted a new trial within 120 days); see also Satterlee v. Wolfenbarger, 453 F.3d 362, 370 (6th Cir. 2006) (citing cases).

**IT IS THEREFORE ORDERED** that in accordance with 28 U.S.C. § 2254(d)(1), the petition for a writ of habeas corpus is **granted**. The judgment of conviction against petitioner Richard M. Fischer in Ozaukee County Circuit Court case number 2005CM123 shall be vacated, expunged, or otherwise set aside without prejudice against any retrial in accordance with this order. Any such retrial shall commence within 60 days of the date of this order, subject to delays agreed upon by the parties, or necessitated by other pretrial proceedings as determined by the trial court. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of September, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge